**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Liberty Life Insurance Company, | Civil Action No.: 3:11-cv-00048-JFA |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Spectrum Direct Insurance Services, Inc., Seymour Alter, and Christopher Snyder, | **(non-jury)** |
| Defendants. | |

Plaintiff, Liberty Life Insurance Company ("Liberty Life"), complaining of the Defendants, would respectfully show as follows:

**PARTIES**

1. Liberty Life is a South Carolina domestic corporation which is engaged primarily in the business of life insurance sold through independent producers and marketing organizations.

2. Defendant Spectrum Direct Insurance Services, Inc. ("Spectrum") is an independent insurance marketing organization that is incorporated under the laws of the State of California and that maintains its principal place of business in the State of California.

3. Defendant Seymour Alter ("Alter") is a citizen and resident of the State of California, and is an officer of Defendant Spectrum.

4. Defendant Christopher Snyder ("Snyder") is a citizen and resident of the State of Pennsylvania, and is an officer of Defendant Spectrum.

1

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1332(a), this Court has original jurisdiction over this action between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds $75,000 as to each Defendant.

6.      Venue is proper in the District of South Carolina because the personal guaranties executed by Defendant Snyder and Defendant Alter and the confession of judgment executed by Defendant Spectrum are all subject to enforcement in the District of South Carolina.

## COMMON ALLEGATIONS PERTINENT TO ALL CLAIMS FOR RELIEF

7.      Liberty Life and Defendant Spectrum entered into a Managing General Agent Agreement ("MGA Agreement") on May 27, 2005, which MGA Agreement was subsequently amended on several occasions. (Exhibit 1).

8.      Pursuant to the MGA Agreement, Defendant Spectrum agreed to market Liberty Life's life insurance products through various methods, including direct response email, affiliate marketing, and telephone sales.

9.      Under the terms of the MGA Agreement, commissions were paid to Defendant Spectrum in advance of the commissions becoming fully earned by policies staying in force for 12 months.

10.     In the event policies were canceled or rescinded within the first 12 months, commissions paid to Spectrum would be owed back to Liberty Life in the form of the "chargebacks" which would be aggregated and repaid to Liberty Life in accordance with the terms of the MGA Agreement.

11.     On October 30, 2008, Liberty Life and Defendant Spectrum entered into a separate Commission Advance and Repayment Agreement ("Commission Advance Agreement")

pursuant to which Liberty Life agreed to loan Spectrum a total sum of $800,000 as an advance against future commissions, with such advance to be disbursed as follows: (a) $400,000 on November 1, 2008; (b) $200,000 on February 1, 2009; and (c) $200,000 on May 1, 2009. (Exhibit 2).

12. In addition to provision for the repayment of the $800,000 commission advance, Defendant Spectrum further acknowledged that it owed Liberty Life $283,193.76 for chargebacks on a group of policies that had been rescinded ("Existing Chargeback Balance"), and the Commission Advance Agreement contained additional provisions setting forth how the Existing Chargeback Balance would be repaid to Liberty Life.

13. This Existing Chargeback Balance was separate from and in addition to other chargebacks that would continue to accrue on other policies written by Defendant Spectrum.

14. Liberty Life made the first and second disbursements in the amount of $400,000 and $200,000, respectively.

15. At the request of Defendant Spectrum, the Commission Advance Agreement was amended on April 30, 2009, which amendment modified the repayment schedule for the commission advance and reduced the total amount of the funds to be loaned to Defendant Spectrum to $600,000 by eliminating the third disbursement of $200,000. (Exhibit 3).

16. The Commission Advance Agreement was amended a second time on November 30, 2009 in order to restructure the repayment obligations for the $600,000 commission advance, the full amount of which was outstanding, and to restructure the repayment obligations for the Existing Chargeback Balance, which Defendant Spectrum affirmed was $252,910.78 after agreed upon reductions by Liberty Life. (Exhibit 4).

17. The Commission Advance Agreement was amended a third and final time on July 1, 2010 in order to combine the debt of Defendant Spectrum under the Commission Advance Agreement with the Existing Chargeback Balance (collectively the "Consolidated Debt"), and to restructure the timing of Defendant Spectrum's repayment of this Consolidated Debt, including provisions for interest and principal payments.  (Exhibit 5).

18. In Amendment No. 3, Spectrum expressly affirmed that then current balance of the Consolidated Debt was $771,666.

19. As partial security for all sums owed by Defendant Spectrum under the Commission Advance Agreement and the MGA Agreement, Defendant Spectrum irrevocably confessed judgment in the amount of $771,666 in favor of Liberty Life ("Confession of Judgment"), which sum would only be reduced if the aggregate of the Consolidated Debt plus any additional sums demandable by Liberty Life under the Commission Advance Agreement and MGA Agreement was less than $787,787, including attorneys' fees and interest.  (Exhibit 6).

20. As further partial consideration for Liberty Life's willingness to enter into Amendment No. 3, Defendant Spectrum unconditionally released Liberty Life from any claims of any kind existing as of the date of Amendment No. 3 where the claim related to the financial relationship between the parties, or the performance or non-performance of duties arising out of the MGA Agreement and the Commission Advance Agreement.

21. An additional condition precedent required in Amendment No. 3 was the execution of limited personal guaranties by Defendant Snyder and Defendant Alter in the amount of $100,000 for each Defendant, which personal guaranties were executed on July 8, 2010. (Exhibit 7 and Exhibit 8).

4

22. Under the restructured repayment provisions for the Consolidated Debt, Defendant Spectrum is required to make quarterly interest payments to Liberty Life, with the first such quarterly payment due on August 15, 2010, for the quarter ended July 31, 2010.

23. Beginning January 1, 2011, Spectrum is required to make monthly principal reduction payments in the amount of $25,900 for the Consolidated Debt, with such payments being due on the first business day of each month.

24. Under Commission Advance Agreement, all payments required under the Commission Advance Agreement are to be made electronically and are to be initiated in time to be received by the other party on the due date.

25. Defendant Spectrum failed to make the first two quarterly interest payments, which were due and payable on August 15, 2010 and November 15, 2010, and Defendant Spectrum also failed to make the required principal reduction payment on January 3, 2011.

26. Defendant Spectrum is in default of its obligations to Liberty Life under the Commission Advance Agreement as amended, and Liberty Life has not waived or excused Spectrum's default.

27. Because Defendant Spectrum is in default, Liberty Life is entitled to pursue all remedies against Defendants under the Commission Advance Agreement, the MGA Agreement, the Confession of Judgment, and the limited personal guaranties.

**FIRST CLAIM FOR RELIF**
**CONFESSION OF JUDGMENT BY DEFENDANT SPECTRUM**

28. The Confession of Judgment provides that "[s]hould Spectrum default in any of its obligations, Liberty may immediately file this Confession of Judgment and may take all necessary actions authorized by law to collect the judgment up to the full amount of $771,666 plus interest and collection expenses (including legal fees) incurred by Liberty after default."

29. In entering the Confession of Judgment on behalf of Spectrum, Defendants affirmatively affirmed that Defendant Spectrum had consulted with independent legal counsel of its choosing concerning the waiver of rights and defenses under the confession of judgment procedure, and based on that consultation with its counsel, Defendant Spectrum knowingly and voluntarily waived its rights and defenses, and made the Confession of Judgment in favor of Liberty without reservation and without compulsion of Liberty, its agents, servants or employees.

30. Defendant Spectrum further stated its express desire that the Confession of Judgment be enforced the fullest extent possible.

31. The combined debt of Defendant Spectrum, including all sums demandable under the Commission Advance Agreement and the MGA Agreement, is currently $829,839.00.

32. Because the total sum demandable by Liberty Life under the Commission Advance Agreement and MGA Agreement exceeds $787,787, Liberty Life is entitled to an immediate judgment against Defendant Spectrum in the amount of $771,666, plus its attorneys' fees and costs through the date of the judgment.

## SECOND CLAIM FOR RELIEF
## ADDITIONAL INDEBTEDNESS BY DEFENDANT SPECTRUM

33. Paragraph 8 of Amendment No. 3 to the Commission Advance Agreement expressly states that "[t]he confession of judgment shall not preclude [Liberty Life] from filing suit in any court of competent jurisdiction for any additional sums that may be due under the Commission Advance and Repayment Agreement or the MGA Agreement."

34. Under the Commission Advance Agreement, Defendant Spectrum is indebted to Liberty Life for $786,666, including unpaid principal and interest through December 31, 2010.

35. Under the MGA Agreement, Defendant Spectrum is indebted to Liberty Life for $43,173.00 for additional chargebacks that are not included in the Consolidated Debt Amount.

36. Under the Commission Advance Agreement, Liberty Life is entitled to its attorneys' fees and costs incurred in this action.

37. The combined amount of this additional indebtedness, reduced by the $771,666 Confession of Judgment, is $58,173, and Liberty Life is entitled to an additional judgment against Spectrum for this amount, with accrued interest on the total combined debt through the date of judgment, and for Liberty Life's attorneys' fees and costs through the date of judgment.

### THIRD CLAIM FOR RELIEF
### PERSONAL GUARANTIES BY DEFENDANTS SNYDER AND ALTER

38. In their limited personal guaranties, Defendant Snyder and Defendant Alter unconditionally guarantied the punctual payment and performance when due of all obligations, debts, and liabilities of Defendant Spectrum to Liberty Life pursuant to the Commission Advance Agreement and the MGA Agreement, together with any and all expenses of collection of these sums, including attorneys' fees and court costs.

39. Defendant Snyder and Defendant Alter waived prior notice of demand for payment and waived any requirement that that Liberty Life exhaust its rights and remedies against Spectrum before pursuing the guaranties, and Defendant Snyder and Defendant Alter acknowledged that they are bound for the payment and performance of all obligations of Spectrum as fully as if such obligations were owing directly to Liberty Life by Defendant Snyder and Defendant Alter.

40. The liability of Defendant Snyder under his personal guaranty is $100,000, exclusive of court costs, collection costs, and attorneys' fees incurred by Liberty Life in connection with enforcement of its rights under the guaranty.

7

41.     The liability of Defendant Snyder under his personal guaranty is $100,000, exclusive of court costs, collection costs, and attorneys' fees incurred by Liberty Life in connection with enforcement of its rights under the guaranty.

42.     Because Defendant Spectrum is in default, Liberty Life is entitled to separate and severable judgments against Defendant Snyder and Defendant Alter in the amount of $100,000 each, plus Liberty Life's attorneys' fees and costs through the date of judgment.

WHEREFORE, Liberty Life respectfully prays for the following relief:

a.     Pursuant to its First Claim for Relief, immediate judgment against Defendant Spectrum in the amount of $771,666, plus such attorneys' fees and costs as have accrued as of the date of the judgment;

b.     Pursuant to its Second Claim for Relief, judgment against Defendant Spectrum in the amount of $58,173.00, plus all accrued interest through the date of judgment, any additional chargebacks as have accrued at the time of trial, and Liberty Life's attorneys' fees and costs as have accrued as of the date of the judgment;

c.     Pursuant to its Third Claim for Relief, separate judgments against Defendant Snyder and Defendant Alter in the amount of $100,000 each, plus Liberty Life's attorneys' fees and costs as have accrued as of the date of the judgment; and

d.     For such additional relief as the Court deems appropriate.

s/ Kevin K. Bell
―――――――――――――――――――――――
Kevin K. Bell [5854]
ROBINSON, MCFADDEN & MOORE, P.C.
Post Office Box 944
Columbia, SC  29202
(803) 779-8900

Counsel for Plaintiff

8